***********
The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Baddour and the briefs and arguments of the parties. The appealing party has not shown good ground to reconsider the evidence, receive further evidence, rehear the parties or their representatives, or amend the Opinion and Award.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties as:
 STIPULATIONS
1. By letter dated May 19, 2003, the parties submitted a post hearing stipulation that plaintiff did not work during the time period of August 29, 2001 to May 16, 2002.
2. The parties made no other stipulations.
 *********** EXHIBITS
The following exhibits were admitted into evidence:
(a) Stipulated Exhibit 1: Pre-Trial Agreement
(b) Stipulated Exhibit 2: Plaintiff's medical records
(c) Stipulated Exhibit 3: Separation Agreement
(d) Defendants' Exhibit 1: Plaintiff's Certified Criminal Record
(e) Defendants' Exhibit 2: Photographs
 EVIDENTARY RULING
Defendants' Motion to Admit Evidence that being the Workers' Compensation Policy is ALLOWED.
 ***********
Based upon all of the competent evidence of record the Full Commission makes the following:
 FINDINGS OF FACT
1. The parties are subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. The Travelers, third party administrator for Continental Casualty, is the carrier on the risk.
3. It is contested whether an employee-employer relationship existed between the parties.
4. Prior to August 29, 2001, plaintiff had done occasional work for Jay Roberts as an employee of Classic Vinyl Siding. Jay Roberts was the owner of Classic Vinyl Siding.
5. A few days prior to his work related injury, Jay Roberts asked plaintiff to help him with a siding job. Plaintiff worked on the job for several days prior to his injury.
6. At the job site, Jay Roberts directed various aspects of the work including the hours of work, the placement of the siding, and the methods used for installing the siding.
7. On August 29, 2001, plaintiff was hanging siding on a house when he fell from a ladder. As a result of the fall, plaintiff fractured his left wrist and required seven stitches above his eye.
8. Defendants denied compensability on the grounds that plaintiff was not an employee of Classic Vinyl Siding. Defendants assert that ownership of the company was transferred on January 19, 2001 from Jay Roberts to his wife Mary Roberts as part of a Separation Agreement. Defendants argue that because Jay Roberts no longer owned the company, he lacked authority to hire employees, and thus plaintiff was not an employee of the company on the day of his accident.
9. The Separation Agreement does not mention the transfer of the business. The Agreement provides that "Each party shall have as his/her separate property all items which are by nature personal to each." The business, Classic Vinyl Siding, had always been owned and operated by Jay Roberts, and Mary Roberts had never worked in the business. Thus, the business was "personal" to Jay Roberts.
10. The undersigned find that the Separation Agreement dated January 19, 2001 did not convey ownership of Classic Vinyl Siding from Jay Roberts to Mary Roberts. The alleged transfer of the business was not made public, nor was it disclosed to the plaintiff prior to August 29, 2001. Accordingly, Jay Roberts had the authority to hire employees for Classic Vinyl Siding on or about August 29, 2001.
11. Regardless of whether Jay Roberts had actual authority to hire employees on or about August 29, 2001, he acted with apparent authority to hire plaintiff based upon his past dealings with plaintiff and the failure of either John Roberts or Mary Roberts to disclose the alleged transfer of ownership Classic Vinyl Siding.
12. Dr. Gregory Bauer, an orthopedic surgeon, testified that as of November 20, 2001, plaintiff could return to performing the same type of construction duties that he had performed prior to the accident on August 29, 2001. Until this date, plaintiff was unable to earn wages in the same or any other employment. Dr. Bauer also assigned a ten percent (10%) disability rating to plaintiff's left hand.
13. There is insufficient competent, credible evidence from which to determine plaintiff's average weekly wage.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. The Separation Agreement dated January 19, 2001 failed to transfer ownership of Classic Vinyl Siding from Jay Roberts to Mary Roberts. Accordingly, Jay Roberts had actual authority to hire plaintiff on or about August 29, 2001, and thus plaintiff was an employee of Classic Vinyl Siding on or about August 29, 2001. Investment Properties v. Allen, 283 N.C. 277, 285,196 S.E.2d 262, 267 (1973); Vaughn v. N.C. Dept. of Human Resources375 N.C. App. 86, 91, 245 S.E.2d 892, 895 (1978) affirmed, 296 N.C. 683,252 S.E.2d 792 (1979).
2. In the alternative, Jay Roberts acted with apparent authority to hire plaintiff on or about August 29, 2001, and thus Classic Vinyl Siding is estopped from denying coverage for plaintiff's work-related accident. Robinson v. Rapscallion Marine, Inc.,156 N.C. App. 218, 576 S.E.2d 142 (2003), Zimmerman v. Hogg,286 N.C. 24, 209 S.E.2d 795 (1974).
3. Plaintiff sustained an injury by accident arising out of and in the course of his employment with defendant-employer on August 29, 2001. N.C. Gen. Stat. § 97-2(6).
4. As a result of the compensable injury, plaintiff is entitled to temporary total disability compensation for the period from August 29, 2001 through and including November 20, 2001. N.C. Gen. Stat. § 97-29.
5. Plaintiff is entitled to permanent partial disability compensation as a result of the ten percent (10%) rating to his left hand. N.C. Gen. Stat. § 97-31.
6. Plaintiff is entitled to payment of medical expenses incurred or to be incurred as a result of the compensable injury as may reasonably be required to effect a cure, provide relief, or lessen the period of disability. N.C. Gen. Stat. §§ 97-2(19);97-25.
7. Since there is insufficient competent, credible evidence, there is no conclusion made regarding plaintiff's average weekly wage. N.C. Gen. Stat. § 97-2(5).
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Subject to the attorney's fee approved below, defendants shall pay temporary total disability compensation to plaintiff for the period from August 29, 2001 through and including November 20, 2001. Because this compensation has accrued, it shall be paid in a lump sum.
2. Subject to the attorney's fee approved below, defendants shall pay permanent partial disability compensation for a period of twenty (20) weeks based upon plaintiff's ten percent rating to his left hand.
3. Defendants shall pay for medical expenses incurred as a result of the compensable injury as may reasonably be required to effect a cure, provide relief, or lessen the period of disability.
4. A reasonable attorney's fee in the amount of twenty-five percent (25%) is hereby approved to be deducted from sums due plaintiff and paid directly to plaintiff's counsel.
5. Defendants shall pay the costs due the Commission.
 ORDER
If the parties are unable to agree as to the average weekly wage and consequent compensation rate at which plaintiff is to be paid, plaintiff's counsel is directed to file a Form 33, Request That Claim Be Assigned For Hearing, in order to resolve this issue.
This the 25th day of May 2004
 S/_______________ DIANNE C. SELLERS COMMISSIONER
CONCURRING:
 S/_______________ CHRISTOPHER SCOTT COMMISSIONER
 S/_______________ LAURA K. MAVRETIC COMMISSIONER
DCS/mlb